UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11159-GAO

GREGORY LANGADINOS,
Plaintiff,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS, et al.,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
September 30, 2013

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and Recommendation ("R&R") (dkt. no. 41) with respect to the defendants' motions to dismiss (dkt. nos. 14, 16, 24). After carefully reviewing the pleadings, the parties' submissions, the R&R, and the plaintiff's objections, I agree with the magistrate judge's analysis and conclusions.

Accordingly, I approve and ADOPT the magistrate judge's recommendation in its entirety. The defendants' Motions to Dismiss (dkt. nos. 14, 16, 24) are GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREGORY LANGADINOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-11159-GAO |
| v. | ) | |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF MASSACHUSETTS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS
[Docket Nos. 14, 16, 24]

August 29, 2013

Boal, M.J.

Pro se plaintiff Gregory Langadinos ("Langadinos" or "Plaintiff"),[1] a frequent litigant in this and other courts, filed an amended complaint against defendants University of Massachusetts Board of Trustees ("UMass"), Margaret D. Xifaras ("Xifaras"), in her individual and official capacity, Southern New England School of Law (the "Law School"), Robert V. Ward, Jr. ("Ward"), the Law Office of Kenneth V. Kurnos (the "Law Office"), and Kenneth Victor Kurnos ("Kurnos") (collectively, the "Defendants"). Docket No. 6. Langadinos alleges federal civil rights violations, state law torts, and breach of contract. The Defendants have

---

[1] In reaching its decision, the Court has considered Langadinos' pro se status. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991) (pro se pleadings are to be liberally construed). He is, however, somewhat different from the typical pro se litigant because he graduated from law school, although it appears that he has not been admitted to practice law in any jurisdiction. See Langadinos v. Hosokawa Micron Int'l, Inc., No. 08-11237-DPW, Docket No. 104 at p. 1, n. 1 (D. Mass. Mar. 31, 2011).

moved to dismiss the Amended Complaint. Docket Nos. 14, 16, 24.[2] For the reasons discussed

below, this Court recommends that the District Court grant the motions.

## I.   PROCEDURAL HISTORY

### A.   Prior Proceedings

From 1997 to 1998, Langadinos was a student at the Law School. Langadinos v.

Southern New England School of Law, Civ. A. No. 08-2064, Memorandum and Order on

Defendants' Renewed Motion to Dismiss for Fraud Upon the Court and for Repeated Non-

Compliance with this Court's Orders (Mass. Super. May 3, 2012), p. 1.[3] Due to poor

performance, Langadinos transferred to Touro Law Center ("Touro") in New York. Id. He was

dismissed for academic reasons. Id. He then filed suit against Touro. Langadinos v. Trustees of

Touro College, No. 99-cv-4211 (TCP) (E.D.N.Y.). The suit was removed to federal court where

it was ultimately dismissed with prejudice. Superior Court Dismissal Order at p. 2. The federal

court found Langadinos to be "a vexatious litigant." See Ex. 7B.

Langadinos then applied for readmission to the Law School. Superior Court Dismissal

Order at p. 2. When his application was denied, he sued the Law School, alleging discrimination

on the basis of handicap and national origin. Langadinos v. Southern New England School of

Law, Inc., No. 00-cv-11817-RWZ (D. Mass.). In connection with this lawsuit, Langadinos and

_____

[2] The District Court referred this case to the undersigned for full pretrial proceedings,
including dispositive motions on May 7, 2013. Docket No. 29.

[3] The Court refers to the decision as the "Superior Court Dismissal Order." This decision
is attached as Exhibit 3 to Defendants' Exhibit Appendix. Docket No. 28. The Defendants filed
these exhibits in connection with their motion for a permanent injunction barring the plaintiff
from filing any further lawsuits without prior court approval. Docket No. 26. Those exhibits
overlap with the exhibits attached to Defendants' motion to dismiss. Docket No. 19. For ease of
reference, the Court cites to the Exhibit Appendix at Docket No. 28.

2

the Law School entered into a Confidential Settlement Agreement (the "Settlement Agreement") in October 2001. Ex. 1 to Amended Complaint. Thereafter, Langadinos attended Appalachian School of Law, against which he immediately brought a claim for discrimination. Superior Court Dismissal Order at 2.

On May 6, 2008, Langadinos commenced an action against the Law School, Ward, Xifaras and others in Massachusetts Superior Court. Langadinos v. Southern New England School of Law Inc., No. 08-2064 (Mass. Super.) (the "Superior Court Action").[4] In that case, Langadinos alleged that he learned during a deposition in the case he had brought against Appalachian School of Law that Ward, while Dean of the Law School, had disparaged him in violation of the parties' prior Settlement Agreement and defamed him. On September 9, 2009, the Superior Court dismissed all counts of the complaint except for the claims of breach of contract and defamation. Superior Court Dismissal Order at 2. On May 3, 2012, the Superior Court dismissed the remaining claims on the grounds that Langadinos had committed a fraud upon the Court and repeatedly failed to comply with court orders. Superior Court Dismissal Order. The Superior Court found, among other things, that Langadinos had served scurrilous, racially charged discovery, filed altered documents with the court, filed perjurious and forged affidavits, and committed other misconduct. Id. at 2-13.

The Superior Court also ordered Langadinos to pay in excess of $208,000 in attorneys' fees incurred by defendants as a result of Langadinos' fraudulent conduct. See Langadinos v. Southern New England School of Law, Inc., No. 2008-2064, 2012 WL 4840678, at *3 (Mass.

---

[4] A copy of the Complaint in that action is attached as Exhibit 2 to the Defendants' Exhibit Appendix. Docket No. 28.

3

Super. Sept. 20, 2012). Further, the Superior Court enjoined Langadinos from "filing any action at law or equity in any Massachusetts state court of original jurisdiction against any party" without first filing a verified complaint and going through a prescreening hearing before a regional administrative justice to determine whether or not Langadinos' claims were frivolous. Langadinos v. Southern New England School of Law, Inc., No. 2008-2064, 2012 WL 4854704, at * 3 (Mass. Super. Sept. 20, 2012).

    B.    This Action

Plaintiff filed this action on June 28, 2012. Docket No. 1. The original complaint alleges that various defendants violated RICO, federal and state wiretapping acts, and committed fraud on the court. Id. The original complaint named as defendants W.R. Berkley Corporation, William R. Berkley, Acadia Insurance Company, Ward, the Law School, Kurnos and the Law Firm. Docket No. 1 at ¶¶ 6-12.

On October 23, 2012, Langadinos filed a motion to extend the time to serve the Complaint for six months until April 28, 2013. Docket No. 2. The District Court allowed the motion in part and extended the time to serve the Complaint until January 21, 2013. Docket No. 4. On January 22, 2013, Langadinos filed an Amended Complaint. Docket No. 6. The Amended Complaint is completely different from the original complaint. The Amended Complaint dropped defendants W.R. Berkley Corporation, William R. Berkley and Acadia Insurance Company and adds defendants UMass and Xifaras. Id. In addition, all of the claims in the original complaint have been replaced by claims for unlawful retaliation, violations of the Americans with Disabilities Act, different civil rights violations, breach of contract claims, fraud in the inducement, intentional/negligent infliction of emotional distress and defamation. Id.

4

Also on January 22, 2013, Langadinos filed proof of service of the Complaint. The proofs of service state that a copy of the Amended Complaint was served on January 18, 2013. Docket Nos. 7-12. However, the Amended Complaint was not filed until January 22, 2013. Docket No. 6.

All Defendants have moved to dismiss the Amended Complaint, Docket Nos. 14, 16, 24, and rely on or incorporate the arguments contained in Docket No. 18, one of the moving memoranda. See Docket No. 25 at 19-20. Langadinos filed an opposition to Defendants' motion to dismiss on May 21, 2013. Docket Nos. 34, 35.

II.   FACTS[5]

The Amended Complaint is lengthy, rambling, repetitive and contains few non-conclusory allegations. As best as the Court can discern, Langadinos makes the following factual allegations. On or about October 15, 2001, Langadinos and the Defendants agreed to settle a federal lawsuit filed by Langadinos on or about August of 2000 and entered into a Settlement Agreement. Complaint, ¶ 18. The Settlement Agreement contains a non-disparagement clause wherein they agreed "that they will not at any time (i) publicly disparage each other and/or (ii) engage in any conduct that is in any way injurious to the other party's reputation and interest (including, without limitation, any negative or derogative statements or writings)." Complaint, ¶ 23; Ex. 1 at ¶ 18.

Two and half months after entering into the Settlement Agreement, Langadinos enrolled

---

[5] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in the Plaintiff's favor. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

at Appalachian School of Law in Virginia. Complaint, ¶ 24. On January 16, 2002, while

Langadinos attended Appalachian Law School, another student shot and killed three people at

the school. Complaint, ¶ 25. On January 3, 2003, Ward approached Wendy Davis, Assistant

Dean of Appalachian Law School, and falsely told her that he knew Langadinos well and said

"You are approaching the one year anniversary of the shooting, you have a student on your

campus who is capable of violent and irrational behavior and I'm worried about you personally."

Complaint.

¶¶ 27, 30. Ward told Davis that the student was Langadinos. Complaint, ¶ 30.

Langadinos also alleges that Ward and Kurnos "have embarked on a vicious campaign of

defaming the plaintiff to the Boston Globe." Complaint, ¶ 36. On or about September 2012,

Ward and Kurnos were interviewed by the Boston Globe. Complaint, ¶ 45. Ward stated the

following to the Boston Globe, with respect to Langadinos: "There has been a whole lot of

discussion about bullies." Complaint, ¶ 46. Ward also said, "This guy is a bully, and he uses the

court system to do it." Id. Langadinos also attributes the following statements to Kurnos:

(1) "He flunked out of Southern New England, he won a judgment which is sealed by

court order."

(2) "Kurnos said that he does not even know if the elusive Langadinos, who represents

himself in his lawsuits, knows his case has been dismissed."

(3) "He's abusing the court system and making it spend thousands of hours on nonsense

he said."

(4) "He's a big guy with a big head and he intimidates people."

Complaint, ¶ 48. Langadinos also alleges that Ward and/or Kurnos said to the Boston Globe,

"He is Greek." Complaint, ¶ 63.

The Amended Complaint contains thirteen counts:

(1) Count 1, against all Defendants, alleges unlawful retaliation in violation of Section 504 of the Rehabilitation Act.

(2) Count 2, against all Defendants, alleges violations of 42 U.S.C. § 1981;

(3) Count 3, against all Defendants, alleges violations of Section 504 of the Rehabilitation Act;

(4) Count 4, against all Defendants, alleges violations of 42 U.S.C. § 1983;

(5) Count 5 seeks injunctive relief restraining Defendants from further retaliating against Langadinos in violation of Title II of the ADA and Section 504 of the Rehabilitation Act;

(6) Count 6 seeks a declaratory judgment (although it is not clear what declaration he seeks);

(7) Count 7, against all Defendants, alleges "breach of contract not to violate privacy" under the Privacy Under Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232(f);

(8) Count 8, against the Law School and Ward, alleges a breach of the Settlement Agreement;

(9) Count 9, against UMass, Xifaras, the Law School and Ward, alleges a breach of the Settlement Agreement;

(10) Count 10, against all Defendants, alleges a breach of the Settlement Agreement;

(11) Count 11, against the Law School, UMass, Xifaras and Ward, alleges fraud in the inducement and misrepresentations;

7

(12) Count 12, against all Defendants, alleges negligent, intentional, and reckless infliction of emotional distress, as well as interference with contractual relations; and

(13) Count 13, against the Law Office, Kurnos and Ward, alleges defamation.

III.    ANALYSIS

A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Pro se pleadings are to be liberally construed. Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-

pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

    B.    <u>Scope Of The Record</u>

As a preliminary matter, the Court must determine what documents it may consider in connection with the Defendants' motions to dismiss. In support of their motions to dismiss, the Defendants proffer a number of documents, attached to their memoranda of law. <u>See</u> Docket Nos. 14-2, 19, 24-1. In both of his oppositions to Defendants' motions to dismiss, Langadinos appears to request that Defendants' pending motions and all exhibits thereto be stricken by the Court. Docket Nos. 34 at 20, 35 at 2-3. The Court finds that, except for the Affidavit of Margaret D. Xifaras (Docket No. 25-1), it is appropriate to consider the exhibits attached to the Defendants' motions to dismiss without converting their motions into motions for summary judgment.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 36 (1st Cir. 2013) (citing <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)). "These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." <u>Id.</u> (internal quotations, modifications and citations omitted). "Matters of public record ordinarily include 'documents from prior state court adjudications.'" <u>Giragosian v. Ryan</u>, 547 F.3d 59, 66 (1st Cir. 2008)

(quoting Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)). See also Obi v. P&B All-Star Constr., Inc., No. 11 C 3980, 2011 WL 4361563, at *1 (N.D. Ill. Sept. 19, 2011) (court may take judicial notice of court records in prior action for the purpose of determining what claims were brought in that case, and the disposition of those claims).

The vast majority of the exhibits consist of copies of Langadinos' prior litigation filings and the rulings by the state and federal courts in connection with those proceedings. As these are matters of public record, the Court may consider them in connection with Defendants' motion to dismiss.

The Defendants also submitted a copy of a video deposition taken in connection with one of Langadinos' prior lawsuits. Although the Court will not consider the statements made in the deposition, the Court can take judicial notice of the date that the deposition occurred and the fact that Langadinos and his attorney were present during the deposition. Cf. Lia v. Saporito, 909 F. Supp. 2d 149, 178 (E.D.N.Y. 2012) (taking judicial notice of the fact that plaintiff made certain statements during prior deposition not for the truth of the statements but to show that statements in deposition were inconsistent with the factual allegations in plaintiff's complaint). The Court's disposition of the statute of limitations issue, however, makes it unnecessary to determine whether it should consider the video deposition.

Defendants UMass and Xifaras submitted an Affidavit of Margaret Xifaras (Docket No. 25-1) in support of their motion to dismiss. The Court finds that it is inappropriate to consider the affidavit, but that it may consider those exhibits to the affidavit that consist of matters of public record (Exs. A-1, A-2, A-3, and A-4). In any event, as set forth below, consideration of these exhibits is not necessary to the Court's resolution of UMass and Xifaras' motion to

dismiss.

Finally, Langadinos also attaches documents to his oppositions to Defendants' motions to dismiss. Many of Langadinos' exhibits consist of public records, and documents sufficiently referenced in, or attached to, the Amended Complaint. The Court will consider those documents. The Court, however, will not consider Exhibits 3, 4, 5, and 7-13 to Docket No. 34 and Exhibits 5 and 13 to Docket No. 35. These documents consist of affidavits or emails that do not satisfy any exception necessary for consideration on a motion to dismiss.

C.   Motion To Dismiss Of Defendants Ward, Kurnos, The Law Office, The Law School, And Xifaras, In Her Individual Capacity

Defendants Ward, Kurnos, the Law Office, the Law School, and Xifaras, in her individual capacity, have moved to dismiss Langadinos' Amended Complaint on several grounds. Docket Nos. 14, 15, 16. Defendants UMass and Xifaras, in her official capacity, have joined the motion. See Docket No. 25 at 19-20. First, the Defendants argue that service of the Amended Complaint was improper and incomplete. Docket No. 18 at 8, 19-20. Second, they argue that, except for the claims related to the Boston Globe article, Langadinos' claims are barred by the doctrine of res judicata. Id. at 8-13. They also argue that the statute of limitations has run with respect to most of Langadinos' claims because the claims are based on the alleged exchange between Ward and Davis in 2003 and Langadinos had knowledge of this claim no later than May 7, 2006. Id. at 15-16. In addition, they argue that the Court lacks subject matter jurisdiction over the Boston Globe claims. Id. at 13-15. That claim should be dismissed and not remanded to state court because remand would fly in the face of the Superior Court order of September 20, 2012 enjoining Langadinos from filing any further actions in state court. Id. at 16. Finally, they argue that the Amended Complaint fails to state a claim with respect to the

11

Boston Globe claims. Id. at 16-19. This Court finds that the Amended Complaint is subject to dismissal.

      1.     Insufficient Process

Defendants move to dismiss the Complaint on the grounds of improper and incomplete service of process. Docket No. 18 at 8, 19-20. A defendant may move to dismiss the complaint based on insufficient process pursuant to Rule 12(b)(4) and based on insufficient service of process pursuant to Rule 12(b)(5). Fed. R. Civ. P. 12(b)(4)-(5). Rule 4 of the Federal Rules of Civil Procedure sets forth the procedural requirements for proper service, which in turn are incorporated in Rule 12(b). Fed. R. Civ. P. 4.

"The defense of insufficiency of process differs from insufficiency of service of process: the former challenges the content of a summons; the latter challenges the manner or method of service." Heise v. Olympus Optical Co., Ltd., 111 F.R.D. 1, 5 (N.D. Ind. 1986). The plaintiff bears the burden of establishing the validity of process. Wright & Miller, FED. PRAC. AND PROC., § 1353. Here, the Defendants cite to Rule 12(b)(5) but they appear to be raising an issue with the summonses, not with the manner or method of service. Langadinos does not appear to respond to this argument in his opposition memoranda.

The summonses that were issued by the Court on January 17, 2013 were issued five days before the Amended Complaint was filed with the Court, and were issued with reference to the original complaint, naming those parties rather than the parties named in the Amended Complaint. Langadinos used those summonses to serve the Defendants named in the Amended

Complaint with an Amended Complaint that had not yet been filed in this case.[6] See Docket
Nos. 7-12. Accordingly, the Amended Complaint is subject to dismissal based on insufficient
process.

    2.    Res Judicata

The Defendants argue that, except for the claims related to the Boston Globe article,
Langadinos' claims are barred by the doctrine of res judicata based on the dismissal of
Langadinos' Superior Court Action. Docket No. 18 at 8-13. This Court agrees.

"A federal court is generally bound under res judicata to give the same preclusive effect
to a state court judgment as would be given to it by a local court within that state." FPL Energy
Maine Hydro LLC v. F.E.R.C., 551 F.3d 58, 63 (1st Cir. 2008). "Res judicata 'makes a valid
final judgment conclusive on the parties . . . and prevents relitigation of all matters that were or
could have been adjudicated in the action.'" Andrew Robinson Int'l, Inc. v. Hartford Fire Ins.
Co., 547 F.3d 48, 52 (1st Cir. 2008) (quotation omitted). Under Massachusetts law, res judicata
requires the presence of three elements: "(1) the identity or privity of the parties to the present
and prior actions; (2) the identity of the cause of action; and (3) prior final judgment on the
merits." Bui v. Ma, 62 Mass. App. Ct. 553, 579 (2004) (citations omitted). A plaintiff is
precluded from litigating not only those claims that were actually decided but those that could
have been brought in that action. Id.

Here, there is identity of the parties as to the Law School, Xifaras, Ward, the Law Office
and Kurnos. Langadinos sued the Law School, Xifaras, and Ward in the Superior Court Action.

---

[6] Indeed, the caption of the summonses list the case name as Gregory Langadinos v. W.R.
Berkley Corporation, et al. W.R. Berkley Corporation is not named in the Amended Complaint.

Docket No. 28 at Ex. 2. Although Langadinos did not sue Kurnos or the Law Office in the Superior Court Action, the Court finds they have a sufficiently close relationship with the Law School, Xifaras and Ward to warrant the application of res judicata. A non-party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided so long as the parties have a sufficiently close relationship. See TLT Constr. Corp. v. A. Anthony Tappe and Associates, Inc., 48 Mass. App. Ct. 1, 5 (1999) (citations omitted). Here, Langadinos sues the Law Office "as employer for defendant Ward, and as agent and 'respective attorney' of [the Law School]." Complaint, ¶ 15. He also sues Kurnos as "agent and 'respective attorney' of [the Law School]." Complaint, ¶ 16. Accordingly, the Court finds that the element of identity of the parties is satisfied as to the Law School, Xifaras, Ward, Kurnos and the Law Office.

UMass stands in different footing. UMass was not a party to the Superior Court action and it does not appear to be sufficiently related to any of the other Defendants. Although Xifaras is currently a member of the Board of Trustees of UMass, she was sued in the Superior Court Action in her capacity as the Chairwoman of the Board of Trustees for the Law School. Docket No. 28 at Ex. 2. Langadinos does argue that UMass is responsible for the liabilities of the Law School. See Docket No. 35 at 13-14. However, UMass denies that it is a successor to the Law School. Docket No. 25 at 17-18. In any event, the Amended Complaint does not contain any allegations supporting an inference that UMass is the Law School's successor. Accordingly, the Court finds that there is no identity of the parties between the defendants in the Superior Court Action and UMass.

The Court also finds identity of the cause of action. "Massachusetts deems causes of

14

action identical for claim preclusion purposes if they 'grow out of the same transaction, act, or agreement, and seek redress for the same wrong.'" Andrew Robinson Int'l, Inc., 547 F.3d at 52 (quoting Brunson v. Wall, 405 Mass. 446 (1989) (internal modifications omitted)). Except for the allegations relating to the Boston Globe article, the claims in both actions arise out of the same set of facts. Indeed, the complaint in the Superior Court Action is strikingly similar to the Amended Complaint. Although Langadinos has added federal claims that he did not raise in the Superior Court action, the doctrine of res judicata "will apply even though a party is prepared in a second action to present difference evidence or legal theories to support his claim or seeks different remedies." Baby Furniture Warehouse Store, Inc. v. Meubles D & F Ltée, 75 Mass. App. Ct. 27, 34 (2009) (citation omitted).[7]

Finally, the judgment in the Superior Court Action was a final judgment on the merits. Langadinos argues that it is not. Docket No. 34 at 13-14. Under Massachusetts law, a dismissal for failure to state a claim operates as a dismissal on the merits. Mestek, Inc. v. United Pac. Ins. Co., 40 Mass. App. Ct. 729, 731 (1996) (quotation omitted). Dismissal of some of the claims based upon fraud of the court and failure to comply with court orders also operates as a final judgment on the merits. Rule 41(b)(3) of the Massachusetts Rules of Civil Procedure provides, in relevant part, that "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19 . . . operates as an adjudication upon the merits." Mass. R. Civ. P. 41(b)(3). Thus, because dismissal based upon fraud on the court and failure to comply with court orders is not one of the specific categories of

---

[7] Indeed, Langadinos does not dispute that identity of the cause of action is present in this case. See Docket No. 34 at 13.

dismissal which is excluded by the plain language of the rule, the Court finds that the dismissal in the Superior Court Action was a final judgment on the merits. See also Obi, 2011 WL 4361563, at *3 (dismissal of action based on a finding that plaintiff filed fraudulent documents with the court is a final judgment on the merits, unless the dismissing judge expressly provided otherwise). Therefore, the Court finds that, except claims based on the Boston Globe article, Langadinos' claims against the Law School, Xifaras, Ward, the Law Office and Kurnos are barred by the doctrine of res judicata.[8] Counts 2, 4, 10, 12 and 13 are based, in whole or in part, on the Boston Globe article allegations. Accordingly, the Court recommends dismissal of the remaining counts against the Law School, Xifaras, Ward, the Law Office and Kurnos on the grounds of res judicata.

3.     Statute of Limitations

The Defendants also move to dismiss all of Langadinos' claims, except those based on the Boston Globe article, because they are barred by the applicable statute of limitations. Docket No. 18 at 15-16. Langadinos' claims are largely based on an alleged exchange between defendant Ward and Wendy Davis, dean of the Appalachian School of Law, in 2003. See, e.g., Amended Complaint, ¶¶ 27-28, 30, 104, 112. On May 7, 2006, Ms. Davis was deposed in connection with Langadinos' suit against Appalachian Law School. Amended Complaint, ¶ 29. During that deposition, Ms. Davis testified that at a conference of the American Association of

---

[8] To the extent that Langadinos argues that he is attacking the judgment in the Superior Court Action based upon fraud on the court by the Defendants (see Docket No. 34 at 16-20), the Court notes that the Amended Complaint does not contain any such claim or even contain any allegations that would meet the demanding standard for fraud upon the court, which must be plead with particularity. See Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) (citations omitted).

Law Schools, Ward told her that Langadinos was capable of violent and irrational behavior . Id. at ¶¶ 27, 30. Langadinos states that he did not learn about Ms. Davis' testimony until October 2006. Id. at n. 4. However, the Defendants have filed a copy of the videotaped deposition transcript of May 7, 2006, during the opening of which Langadinos' presence is announced by the videographer. Ex. 9 to Defendants' Motion. The Defendants argue, therefore, that Langadinos knew of the alleged exchange between Ward and Davis no later than May 7, 2006. Docket No. 18 at 15. Because the longest statute of limitations for any of Langadinos' claims is six years,[9] the statute of limitations ran, at the latest, on May 7, 2012. Id. at 16. Langadinos did not file this action until June 28, 2013 and his claims are then time barred. Id. Defendants are correct.

Statutes of limitation are procedural devices, which "normally govern[] the time within which legal proceedings must be commenced after the cause of action accrues." McGuiness v. Cotter, 412 Mass. 617, 621-22 (1992) (citation omitted). A cause of action generally begins to accrue on the date of the plaintiff's injury, or the date that the injury is, or reasonably should have been, discovered. Id. Here, Langadinos' claims based on the exchange between Ward and Ms. Davis accrued when Langadinos discovered, or should have discovered, that the exchange took place. Langadinos states that he did not learn of the exchange until October 2006, when he received a transcript of Ms. Davis' deposition. Amended Complaint, n. 4 and Ex. 8 thereto. The

---

[9] Langadinos' breach of contract claims have a six-year statute of limitations. M.G.L. c. 260, § 2. Langadinos' Rehabilitation Act, ADA, and fraud in the inducement claims have three-year statute of limitations. See Toledo-Colon v. Commonwealth of Puerto Rico, 812 F. Supp. 2d 110, 119 (D.P.R. 2011); Nazarro v. Richard O'Neill, Jr. & Associates, P.C., 76 Mass. App. Ct. 1106 (2010) (table) (citing M.G.L. c. 260, § 2A). The remaining claims are based on the Boston Globe article but, in any event, the statute of limitations for those claims is not longer than 6 years.

Defendants state that contrary to Langadinos' statements, he was present at Ms. Davis' deposition and, therefore, learned of the statements on that date. Docket No. 18 at 15. Langadinos states that, although he was present at the deposition, he had left the room numerous times during the deposition and was not in the room when Ms. Davis related the statements attributed to Ward. See Ex. 8 to Amended Complaint at p. 2. In any event, whether Langadinos heard Davis' testimony or not, he does not dispute that his attorney was at the deposition. Indeed, Langadinos' attorney was the one deposing Ms. Davis. See Amended Complaint at ¶ 29. As Langadinos' agent, his counsel's knowledge is imputed to Langadinos. See HDH Corp. v. LaFlamme, 62 Mass. App. Ct. 1106 (2004) (table) (attorney's knowledge of contents of an answer imputed to client); Quinn v. Hintlian, 4 Mass. App. Ct. 805, 805 (1976). Thus, Langadinos was on notice of Ward's alleged statements no later than May 7, 2006. The longest statute of limitations ran on May 7, 2012. Langadinos filed this case on June 28, 2012. Accordingly, except for claims related to the Boston Globe article, Langadinos' claims are barred by the applicable statutes of limitations.

    4.    Lack Of Subject Matter Jurisdiction

The Defendants argue that the Court lacks subject matter jurisdiction over the remaining claims. Docket No. 18 at 13-15. They argue that, after the claims that have been or could have been adjudicated in the Superior Court Action are eliminated, the only claims remaining are those based upon the October 6, 2012 Boston Globe article. Id. at 13. To the extent that Langadinos has any claims arising out of that article, jurisdiction does not lie with this Court. Id. This Court agrees.

"A fundamental principle of the structure of our democracy is that federal courts are

courts of limited jurisdiction." Destek Group, Inc. v. N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38

(1st Cir. 2003) (citations omitted). "The power of lower federal courts is limited to jurisdiction

authorized by the Constitution and expressly conferred by Congress." Id. Because federal

courts have limited jurisdiction, the court never presumes jurisdiction. Viqueira v. First Bank,

140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating

the existence of federal jurisdiction. Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir.

1996).

        In a non-diversity case,[10] federal district courts have jurisdiction over cases "arising

under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. In assessing

whether such a federal question is presented, courts are obligated to follow the well-pleaded

complaint rule, examining the four corners of the plaintiff's complaint for a federal claim.

Viqueira, 140 F.3d at 17. A mere glancing reference to federal law will not suffice, rather "[a]

right or immunity created by the Constitution or laws of the United States must be an element,

and an essential one, of the plaintiff's cause of action." Gully v. First Nat'l Bank, 299 U.S. 109,

112 (1936).

        Courts must distinguish between lack of subject matter jurisdiction and the failure to state

a claim upon which relief may be granted. Brule v. Southworth, 611 F.2d 406, 409 (1st Cir.

1979) (citations omitted). As the Supreme Court stated:

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail
> to state a cause of action on which petitioners could actually recover. For it is
> well settled that the failure to state a proper cause of action calls for a judgment
> on the merits and not for dismissal for want of jurisdiction. Whether the

---

[10] There is no diversity jurisdiction here, as Langadinos and the Defendants are all
citizens of Massachusetts. See Complaint, ¶¶ 10-16.

> complaint states a cause of action on which relief could be granted is a question
> of law and just as issues of fact must be decided after and not before the court has
> assumed jurisdiction over the controversy.

Bell v. Hood, 327 U.S. 678, 682 (1946). The Supreme Court carved out two exceptions to this

principle for cases where the alleged federal claim is "immaterial and made solely for the

purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." Cowan v. Keystone

Employee Profit Sharing Fund, 586 F.2d 888, 892 (1st Cir. 1978) (quoting Bell, 327 U.S. at 682-

683).

After review of the Amended Complaint, this Court finds that these exceptions preclude

federal jurisdiction. The facts of the case, as alleged, simply are not covered by any federal

statute. At its core, Langadinos' Amended Complaint alleges that the Defendants defamed him

and violated the non-disparagement clause in the Settlement Agreement. "The normal remedy

for a failure to abide by a settlement of federal litigation is a suit on the settlement contract.

Such a claim arises under state law and must proceed in state court unless the parties are of

diverse citizenship and the injury exceeds $75,000." Kay v. Bd. of Education of the City of

Chicago, 547 F.3d 736, 737 (7th Cir. 2008) (dismissing Section 1983 action premised on failure

to abide by settlement agreement).

Langadinos attempts to recharacterize his claims by alleging that Kurnos and Ward

engaged in racial discrimination in violation of federal law by referring to him as "a big guy with

a big head, and he intimidates people." Amended Complaint, ¶¶ 63, 64; see also Amended

Complaint, ¶ 78. He also alleges that Kurnos and Ward stated that "He is Greek." Id. However,

the statement that Langadinos is a big guy with a big head has no apparent connection with race

or ethnicity. In addition, the statement "He is Greek" attributed to Kurnos and Ward does not

appear in the Boston Globe article. The only reference to Langadinos' Greek heritage appears at the beginning of the article where the author (who is not a defendant in this case) notes that Langadinos had previously sued the Law School claiming that he was discriminated against "on the basis of his heritage, which is Greek." Ex. 11 to Amended Complaint. In light of Langadinos' prior litigation history, of which the Court takes judicial notice, the Court finds that Langadinos' federal claims based on the Boston Globe article are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial and frivolous.

The remaining claims arising from the Boston Globe article (Counts 10, 12 and 13) set forth state law claims. Therefore, all of Langadinos' claims arising from the Boston Globe should be dismissed for lack of subject matter jurisdiction.

Alternatively, if the District Judge disagrees with this Court's conclusion, then this Court recommends that the District Judge dismiss the federal law claims for failure to state a plausible claim and decline to exercise supplemental jurisdiction over Langadinos' state law claims and dismiss those claims. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Where, as here, the federal claims are being dismissed at an early stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims[.]" Id.

5.    Failure To State A Claim

Finally, the Defendants argue that the Amended Complaint fails to state a claim as to Langadinos' state law claims based on the Boston Globe article. Docket No. 18 at 16-19.

Langadinos brings claims of breach of contract, negligent, intentional and reckless infliction of emotional distress, and defamation based on the Boston Globe article. Counts 9, 10, 12 and 13.[11] Even if the District Court had jurisdiction over the state law claims, the Amended Complaint fails to state a plausible claim on these counts.

 a. Breach Of Contract

Langadinos brings claims of breach of contract against all Defendants based on the Boston Globe article. See Count 10. Langadinos alleges that the comments made by Ward and Kurnos to the Boston Globe reporter breached the Settlement Agreement's non-disparagement clause. Amended Complaint, ¶¶ 117, 120.

In order to prevail on his contract claim, Langadinos must prove (1) the existence of a valid contract between him and the Defendants; (2) that the Defendants breached their duties under the contract; and (3) that the breach caused plaintiff damage. Singarella v. City of Boston, 342 Mass. 385, 387 (1961).

Defendants move to dismiss this claim on the grounds that Langadinos will be unable to prove any damages. Docket No. 18 at 19. However, under Massachusetts law, a person who is injured by a breach of contract has a right to judgment even if the breach caused no harm. See Flynn v. AK Peters, Ltd., 377 F.3d 13, 23 (1st Cir. 2004) (citations omitted).

The Court notes that although Langadinos brings this claim against all Defendants, only the Law School was a party to the Settlement Agreement. See Ex. 1 to Amended Complaint at pp. 1, 5. Ward signed the Agreement, but he did so only as a representative of the Law School.

---

[11] Count 12 also alleges intentional infliction of emotional distress against the UMass Defendants only.

See id. at p. 5. Langadinos alleges, however, that Ward and Kurnos are agents of the Law School. Amended Complaint, ¶¶ 116, 118. There are no allegations in the Complaint, however, that Ward and Kurnos were speaking for the Law School and nothing in the Boston Globe article suggests that they were. Indeed, the Amended Complaint alleges that Ward ceased being the Dean of the Law School in October 2010. Amended Complaint, ¶ 8. In addition, there are no allegations in the Amended Complaint tying Xifaras and UMass to the article. Accordingly, the Court finds that Langadinos has failed to plead a breach of contract claim.

   b.   Defamation

Langadinos brings a claim of defamation against all Defendants based on the Boston Globe article.[12] See Count 13. "Defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff." Yohe v. Nugent, 321 F.3d 35, 39-40 (1s Cir. 2003) (citing McAvoy v. Shufrin, 401 Mass. 593, 597 (1988)). To establish a claim of defamation, Langadinos must prove (1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party. Taylor v. Swartwout, 445 F. Supp. 2d 98, 102 (D. Mass. 2006) (citation omitted). Langadinos must also show that he suffered special damages and must set forth these damages specifically. Yohe, 321 F.3d at 40 (citation omitted); Alba v. Sampson, 44 Mass. App. Ct. 311, 312 (1998) (proof required of special damages, which consist of economic, as distinguished from general, damages).

---

[12] In his opposition memoranda, Langadinos mentions other comments by Ward to Massachusetts Lawyers Weekly, the U.S. Department of Education and numerous other organizations. Docket No. 34 at 11-12. Those comments are not described in the Amended Complaint. Therefore, this Court may not consider them in the context of a motion to dismiss.

23

A defamatory statement is one that "hold[s] the plaintiff up to contempt, hatred, scorn, or ridicule or tend[s] to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community." Yohe, 321 F.3d at 40 (citation omitted). Statements of opinion, however, are not defamatory. Id. at 41. Whether a statement constitutes fact or opinion is a question of law for the Court. Lyons v. Globe Newspaper Co., 415 Mass. 258, 262 (1993). "To determine whether or not a statement is an opinion, a court must examine the statement in its totality and in the context in which it was uttered or published. The court must consider all the works used and must give weight to cautionary terms used by the person publishing the statement." Yohe, 321 F.3d at 41 (internal modifications omitted). The court must also consider all of the circumstances surrounding the statement. Id. However, a statement of opinion nevertheless may be actionable if it communicates a defamatory meaning by implying the existence of undisclosed facts that have no basis in truth. Id.

Langadinos objects to the following statements in the Boston Globe article as defamatory:

(1) "He flunked out of Southern New England, he won a judgment which is sealed by court order."

(2) "Kurnos said that he does not know if the elusive Langadinos, who represents himself in his lawsuits, knows his case has been dismissed."

(3) "He's abusing the court system and making it spend thousands of hours on nonsense he said."

(4) "He's a big guy with a big head and he intimidates people."

Amended Complaint. ¶ 140.

24

First, a reading of the article shows that the first statement about Langadinos "flunk[ing] out of Southern New England" is not attributed to Ward or Kurnos. The remaining statements are either non-defamatory or statements of opinion. The second statement that Kurnos did not know whether Langadinos knows his case has been dismissed is non-defamatory. There is nothing in that statement that would subject Langadinos to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community. The last two statements are statements of opinion.

In addition, the Defendants are correct that nowhere in the Complaint does Langadinos plead any special damages suffered as a result of the allegedly defamatory statements. Finally, the Court notes that there are no allegations that the Law School, UMass or Xifaras made any defamatory statements. Accordingly, Langadinos has failed to state a claim for defamation.

    c.    <u>Emotional Distress</u>

Langadinos brings a claim for "negligent, intentional, reckless infliction of emotional distress" against the Defendants, also based, in part, on the Boston Globe article. <u>See</u> Count 12.

To prevail on a claim of intentional infliction of emotional distress,[13] Langadinos must prove that (1) the Defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result from their conduct; (2) Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized society; (3) Defendants' conduct caused Langadinos' emotional distress; and (4) the emotional distress suffered by Langadinos was severe and of a nature that no reasonable person could be expected to endure it. <u>Conley v. Romeri</u>, 60 Mass. App. Ct. 799, 803

---

[13] Intentional and reckless infliction of emotional distress are the same claim. <u>See</u> <u>Tilton v. Town of Franklin</u>, 24 Mass. App. Ct. 110, 112 (1987).

(2004).  Langadinos has not alleged any facts to support an inference that the Defendants'
conduct was extreme and outrageous or that the emotional distress suffered by Langadinos was
severe and of a nature no reasonable person could be expected to endure it.

To prevail on a claim of negligent infliction of emotional distress, Langadinos must
show: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by
objective symptomatology; and (5) that a reasonable person would have suffered emotional
distress under the circumstances of the case." Id. at 801 (citations omitted).  Langadinos has not
alleged any facts in his Amended Complaint[14] that would support an inference of physical harm
manifested by objective symptomatology.  Accordingly, he has failed to state a plausible claim
of either intentional or negligent infliction of emotional distress.

     d.    Claims For Injunctive And Declaratory Relief

Langadinos also brings claims for injunctive and declaratory relief. See Counts 5 and 6.
Injunctive relief is not a cause of action. See In Re WellNex Mktg. and Sales Practices Litig.,
673 F. Supp. 2d 43, 58 (D. Mass. 2009); O'Neil v. Daimler Chrysler Corp., 538 F. Supp. 2d 304,
308 (D. Mass. 2008) (claim for injunctive relief does not allege an independent legal claim).
Similarly, the Declaratory Judgment Act does not, by itself, create a substantive cause of action.
Akins v. Penobscot Nation, 130 F.3d 482, 490 n. 9 (1st Cir. 1997).  Because all of Langadinos'
substantive claims are subject to dismissal, he is unable to maintain a claim for injunctive or
declaratory relief.

---

[14] Langadinos attached the Affidavit of Ronald Schouten, M.D., J.D. to his Amended
Complaint, which contains Dr. Schouten's opinion that Langadinos' difficulties with
concentration, anxiety, depression and sleep were exacerbated as a result of Ward's comments
regarding Langadinos.  Ex. 10 to Amended Complaint.  However, that affidavit is dated October
5, 2011, well before the October 6, 2012 Boston Globe article giving rise to Langadinos' claims.

D.   Motion To Dismiss Of Defendants UMass And Xifaras, In Her Official Capacity

Defendants UMass and Xifaras, in her capacity as a Trustee of the University of

Massachusetts (collectively, the "UMass Defendants"),[15] move to dismiss Langadinos' claims

against them for several reasons. Docket No. 24. First, the UMass Defendants are not parties to

the Settlement Agreement and Langadinos has not alleged that they participated in any of the

conduct alleged in the Amended Complaint. See Docket No. 24 at 4-5, 8-9, 11, 12, 14, 15, 16.

Second, to the extent that Langadinos attempts to argue that UMass is somehow a successor to

the Law School, that argument has no merit. Id. at 8-9, 17-18. Third, Count 4 alleging a

violation of Section 1983 must be dismissed because UMass is not a person for the purpose of

Section 1983. Id. at 10. Fourth, Count 7 must be dismissed because FERPA does not permit a

private right of action. Id. at 13. Fifth, Counts 2, 6, 9, 10, 11, and 12 are barred by the 11th

Amendment to the U.S. Constitution. Id. at 6-8, 11, 15, 16. Finally, UMass is immune from

liability for intentional tortious conduct by the action of M.G.L. c. 258, § 10(c). Id. at 19. This

Court agrees.

1.   The Amended Complaint Does Not Allege Any Involvement
By UMass Or Xifaras, In Her Official Capacity

Plaintiff bases all of his claims in the Amended Complaint upon the alleged conduct of

Ward and Kurnos and sets the allegations in three stages. The "first stage" occurred in 2003,

---

[15] "'Official capacity' suits generally represent only another way of pleading an action
against which the entity of which an officer is an agent." Perez Olivo v. Gonzalez, 384 F. Supp.
2d 536, 542-543 (D.P.R. 2005) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). To the
extent that Langadinos states claims against Xifaras in her official capacity, such claims must be
read as claims against the Commonwealth. Anderson v. Heffernan, No. 12-12173-FDS, 2013
WL 1629122, at *4 (D. Mass. Apr. 9, 2013). Accordingly, for purposes of this section, the
Court makes no distinction between UMass and Xifaras. Langadinos' claims against Xifaras in
her individual capacity are addressed in Section III(C) above.

while Ward was serving as Dean of the Law School and he allegedly told Davis that Langadinos was capable of violent and irrational behavior. Amended Complaint, ¶¶ 25-37, 30. The "second stage" occurred in 2007. Langadinos alleges that Davis advised the U.S. Department of Education's Office for Civil Rights ("OCR") that Ward believed Langadinos was "aggressive" and a "bully." Id. at ¶ 31. According to Langadinos, Ward then "conspired" with Davis and coached her on what to say to OCR. Id. at ¶ 32. The "third stage" occurred when Ward and Kurnos gave an interview to the Boston Globe and is based on the October 2012 Boston Globe article. Id. at ¶¶ 45-46.

Ward was employed by the Law School from October 2001 until October 2010. Amended Complaint, ¶ 8. Ward became Dean of the UMass School of Law in October 2010 and resigned on October 2011. Id. at ¶¶ 8, 20.

Even if the conduct alleged in the Amended Complaint were deemed sufficient to state a claim under each count, nowhere in the Complaint does Langadinos allege that UMass or Xifaras acting in her official capacity participated in that conduct. To the extent that Ward acted as alleged, he did so either acting on his own, in an unofficial capacity, or as Dean of the Law School, but not as Dean of the UMass School of Law. Langadinos concedes that at the time of the alleged conduct described as "stage one" and "stage two," Ward was acting as Dean of the Law School. See Amended Complaint, ¶¶ 8, 25-27, 31-32. Langadinos further concedes that Ward came to be Dean of the UMass School of Law only in October 2010 and resigned on October 20, 2011. Id. at ¶¶ 8, 20. Accordingly, to the extent that Ward made any comments to the Boston Globe in 2012, such comments may not be attributed to UMass.

Langadinos also bases some of his claims on the Settlement Agreement. See Counts 2, 7,

28

8-12. However, UMass is not a party to the Settlement Agreement. See Ex. 1 to Amended
Complaint at pp. 1, 5. Accordingly, UMass cannot be held liable for any breaches of the
Settlement Agreement.

Langadinos argues that UMass should be held liable as a successor to the Law School.
See Docket No. 35 at 12-14. However, there are no allegations in the Amended Complaint that
would support such a theory. Langadinos simply conflates UMass with the Law School and/or
uses the two names interchangeably. See, e.g., Amended Complaint, ¶¶ 24, 30, 41-42, 47, 56,
66, 73, 75, 103, 111, 114, 119, 123, 134, 140. Although Langadinos alleges that the Settlement
Agreement is binding upon the parties and their successors in interest (see, e.g., Amended
Complaint at ¶ 2), there are no allegations in the Complaint that UMass is the Law School's
successor.[16] Without any allegations in the Amended Complaint linking the UMass Defendants
to the conduct alleged therein, all of Langadinos' claims against them must be dismissed for
failure to state a claim.

    2.    Section 1983 Claim

In Count 4 of the Amended Complaint, Langadinos asserts a claim under 42 U.S.C. §
1983 for violation of the Fourth Amendment to the U.S. Constitution. Section 1983 is a vehicle
through which individuals may sue certain persons acting under the color of state law for
deprivation of federally assured rights. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).
Specifically, Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or

---

[16] The Court also notes that none of the documents submitted by Langadinos in
opposition to the UMass Defendants' motion to dismiss support his argument that UMass is the
Law School's successor. See Exs. 2-4, 6-11 to Docket No. 35.

> usage. of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides

a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386,

393-4 (1989).

"A claim under Section 1983 has two essential elements. First, the challenged conduct

must be attributable to a person acting under color of state law" and "second, the conduct must

have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores,

103 F.3d 1056, 1061 (1st Cir. 1997). It is well settled that states and state officials acting in their

official capacity are not persons within the meaning of Section 1983. Will v. Michigan Dept. of

State Police, 491 U.S. 58 (1989); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89

(1984). The UMass Defendants argue that they are an agency of the Commonwealth and,

therefore, not a person for purposes of Section 1983. This Court agrees.

Established by M.G.L. c. 75, § 1, the University of Massachusetts is the state university

in the Commonwealth of Massachusetts. "There is no question that the University of

Massachusetts functions as a State educational institution within the Department of Education

but not subject to the department's control." Robinson v. Commonwealth, 32 Mass. App. Ct. 6,

9 (1992) (citing M.G.L. c. 75, § 1). The University has significant connections to the

Commonwealth and it is dependent upon the Legislature for its operating budget. Id. (citing

M.G.L. c. 75, § 8). Its employees are considered state employees. Id. (citing M.G.L. c. 75, §

14). Its trustees manage and administer all property, real and personal, belonging to the

30

Commonwealth and occupied or used by the University and have the authority to sell and lease land in the name of the Commonwealth. Id. (citing M.G.L. c. 75, §§ 12, 25-27). Accordingly, the Supreme Judicial Court has ruled that "G.L. c. 75 makes clear that the University is an agency of the Commonwealth." McNamara v. Honeyman, 406 Mass. 43, 47 (1989); see also Wong v. Univ. of Massachusetts, 438 Mass. 29, 34-35 (2002); Hannigan v. The New Gamma-Delta Chapter of Kappa-Sigma Fraternity, Inc., 367 Mass. 658, 659 (1975). Accordingly, neither UMass nor Xifaras, acting in her official capacity as a trustee, is a "person" for purposes of Section 1983 and Count 4 is subject to dismissal against them on this ground.[17]

    3.    FERPA

In Count 7 of the Amended Complaint, Langadinos alleges that the Defendants violated his privacy rights under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(f) ("FERPA"). Amended Complaint, ¶¶ 99-101. "Congress enacted FERPA 'to assure parents of students . . . access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent.'" Frazier v. Fairhaven School Committee, 276 F.3d 52, 67-68 (1st Cir. 2002) (quoting 120 Cong. Rec. 39,862 (1974)). However, FERPA does not create a private right of action. Id. at 68. In addition, FERPA does not create any rights enforceable through other statutes. Gonzaga Univ. v. Doe, 536 U.S. 273, 290 (2002) (finding that FERPA did not create enforceable rights under Section 1983).

----

[17] The Amended Complaint states that Langadinos is suing the trustees of the University of Massachusetts in their official and individual capacities. See Amended Complaint, Caption and ¶ 11. However, other than Xifaras, Langadinos has not named any other trustee. Any official capacity claims are subject to dismissal for the reasons stated above. To the extent that he intended to state claims against any other trustee in their individual capacity, those claims fail to state a plausible claim for relief because Langadinos has not alleged any participation by any of them individually in the conduct alleged in the Amended Complaint.

Accordingly, the Court recommends dismissal of Count 7.

> 4.   Sovereign Immunity

The UMass Defendants argue that Counts 2, 6, 9, 10, 11, and 12 are barred by the 11th Amendment to the U.S. Constitution. Docket No. 25 at 6-8, 11, 15, 16. A motion to dismiss on the grounds of sovereign immunity challenges the Court's subject-matter jurisdiction. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). The proper vehicle for challenging a court's subject matter jurisdiction is Rule 12(b)(1) of the Federal Rules of Civil Procedure. Id. at 362. In reviewing a motion to dismiss under Rule 12(b)(1), a court must credit the plaintiff's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor.[18] Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). In deciding a Rule 12(b)(1) motion, a court may consider whatever evidence has been submitted, including depositions and exhibits. Id. The party invoking federal court jurisdiction has the burden of proving its existence. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment also bars

---

[18] As the Valentin court points out, subject matter jurisdiction may be challenged in two ways: a "sufficiency challenge" and a "factual challenge." Id. at 363. In a sufficiency challenge, a defendant challenges the sufficiency of the plaintiff's jurisdictionally significant facts. The court then accepts plaintiff's well-pleaded factual allegations, draws inferences in the plaintiff's favor and then disposes of the challenge. In a factual challenge, a defendant attacks the accuracy of the plaintiff's jurisdictional facts and proffers materials of an evidentiary quality. The court then addresses the merits by resolving the factual disputes between the parties and has broad authority to order discovery and hold evidentiary hearings. Id. Here, the UMass Defendants make a sufficiency challenge.

suits brought for money damages in federal court against a state by its own citizens. Hans v. Louisiana. 134 U.S. 1 (1890). In the absence of consent or abrogation, the Eleventh Amendment proscribes a federal court case in which the state or one of its agencies or departments is the named defendant. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Accordingly, if UMass is a state agency, then Langadinos is barred in federal court from pursuing his claims for money damages under Counts 2, 6, 9, 10, 11, and 12 against UMass or any employee of UMass acting in his or her official capacity.

In Fresenius, the First Circuit set forth a two-pronged test for determining whether a public entity is entitled to Eleventh Amendment immunity. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st Cir. 2003). The first prong asks whether the state has clearly structured the entity to "share its sovereignty." Id. If the factors assessed in evaluating the structure of the state-related entity are inconclusive, then the second prong assesses the risk that damages will be paid from the public treasury. Id. "This analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness." Id.

UMass is a statutorily created entity that is an agency of the Commonwealth of Massachusetts. M.G.L. c. 75, § 1. The governing statute states in pertinent part that the university is a "public institution of higher learning within the system of public higher education and shall be governed by the board of trustees." Id. "The board of trustees . . . have all authority, responsibility, rights, privileges, powers and duties customarily and traditionally exercised by governing boards of institutions of higher learning." Id. The operating funds for UMass are appropriated by the Massachusetts legislature and administered by the University

33

trustees. Mass. Gen. Laws ch. 75, §§ 8, 12.

Several federal courts[19] have found that UMass is a public institution established under the laws of the Commonwealth and is, accordingly, an "arm" of the state entitled to Eleventh Amendment immunity. Jaundoo v. Clarke, 690 F. Supp. 2d 20, 29 (D. Mass. 2010); Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 60 (D. Mass. 2002); Ali v. Univ. of Massachusetts Medical Center, 140 F. Supp. 2d 107, 110 (D. Mass. 2001); Neo Gen Screening, Inc. v. New England Newborn Screening Program, No. 98-10394-GAO, 1998 WL 35278283, at *2 (D. Mass. Dec. 3, 1998), aff'd, 187 F.3d 24 (1st Cir. 1999). Accordingly, this Court finds that UMass is an arm of the state entitled to sovereign immunity.

There is no specific provision abrogating sovereign immunity relative to Langadinos' claims of violations of Section 1981, declaratory relief, and breach of contract in Counts 2, 6, 9, and 10 of the Amended Complaint. See Thomas v. Salem State Univ., No. 11-10748-DJC, 2011 WL 5007973, at *7 (D. Mass. Oct. 18, 2011) ("Massachusetts has not waived, nor has Congress overridden, the state's immunity in regards to a claim under § 1981."); Fenton v. Univ. of Massachusetts, No. 10-30007-MAP, 2010 WL 4027737, at *3 (D. Mass. Sept. 10, 2010) ("Massachusetts has not consented to suit in federal court for contract claims."); Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996) (noting that the Declaratory Judgment Act does not waive sovereign immunity because "the Act neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief.").

---

[19] Federal court decisions are also germane to the analysis as the question of Eleventh Amendment immunity is an issue of federal law. Fresenius, 322 F.3d at 61 (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n. 5 (1997)).

Similarly, sovereign immunity bars Langadinos' claims of fraud in the inducement, misrepresentation, fraud, intentional and reckless infliction of emotional distress, intentional interference with contractual relations, and defamation in Counts 9 to 12 of the Amended Complaint. UMass is immune for liability for intentional tortious conduct pursuant to the Massachusetts Tort Claims Act, M.G.L. c. 258, § 10 ("MTCA").

The MTCA provides a statutory mechanism by which aggrieved persons may bring claims against the Commonwealth and its municipalities, counties, districts, and its employees and officers thereof. Haney v. City of Boston, No. 11-2668-C, 2012 WL 3144816, at *2 (Mass. Super. July 30, 2012) (citing M.G.L. c. 258, §§ 1 et seq.). The MTCA does not completely abrogate the Commonwealth's sovereign immunity but "simply remove[s] the defense of immunity in certain tort actions against the Commonwealth, municipalities, and other governmental subdivisions." Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 285 (1985) (citation omitted). The MTCA preserves a municipality's immunity against certain suits. As relevant here, the MTCA provides that Massachusetts and its subdivisions, such as UMass, are not liable for "any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations." M.G.L. c. 258, § 10(c); see also Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 397 (1996); Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 596 (2001); Consolo v. George, 835 F. Supp. 49, 52 (D. Mass. 1993).

Accordingly, UMass is immune from liability for Langadinos' claims of fraud in the

35

inducement, misrepresentation, fraud, intentional and reckless infliction of emotional distress, intentional interference with contractual relations, and defamation and this Court recommends that the District Judge dismiss those claims against UMass.

IV.    RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant the Defendants' motions to dismiss (Docket Nos. 14, 16, and 24) and dismiss the Amended Complaint.

V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

36